**Electronically Filed**
**Intermediate Court of Appeals**
**29408**
**28-FEB-2011**
**08:34 AM**

NO. 29408

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
JONATHAN FONTES, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 08-1-0295)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Fujise and Leonard, JJ.)

Defendant-Appellant Jonathan Fontes (Fontes) appeals from the Judgment filed on September 16, 2008, in the Circuit Court of the First Circuit (Circuit Court).[1] Fontes was charged by complaint with one count of robbery in the second degree, in violation of Hawaii Revised Statutes (HRS) § 708-841(1)(a) and/or (1)(b) (Supp. 2010).[2] A jury found Fontes guilty as charged.

---

[1] The Honorable Karl K. Sakamoto presided.

[2] HRS § 708-841 provides, in relevant part:

§ **708-841 Robbery in the second degree.** (1) A person commits the offense of robbery in the second degree if, in the course of committing theft . . . . :

    (a)    The person uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance; [or]

    (b)    The person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property[.]

The Circuit Court sentenced Fontes to five years of probation subject to the special conditions that he serve a one-year term of imprisonment and pay a crime victim compensation fee of $205 and a probation services fee of $150.

On appeal, Fontes argues that his trial counsel provided ineffective assistance by eliciting and failing to object to evidence that Fontes "shoplifted a package of beef jerky" shortly before the alleged robbery. Fontes also argues that his trial counsel provided ineffective assistance by failing to object to cumulative testimony about the robbery. For the reasons discussed below, we conclude that Fontes has failed to meet his burden of showing that his trial counsel provided ineffective assistance, and we affirm the Circuit Court's Judgment.

I.

A.

Fontes's theory of defense at trial was mistaken identity. Evidence of Fontes's involvement in a shoplifting incident, which occurred shortly before the robbery and was witnessed by the complaining witness (CW) for the robbery, was integral to Fontes's mistaken-identity defense. Fontes contended that the CW remembered Fontes's face from the shoplifting incident and because the CW associated Fontes's face with criminal activity, the CW later mistakenly identified Fontes as one of the two robbers.

B.

In opening statement, defense counsel told the jury that "this is a case of misidentification." Defense counsel acknowledged the shoplifting incident, stating that Fontes and a friend went to a gas station mini mart, that Fontes was fooling around and took a package of beef jerky, but that Fontes put it back and ran out of the mini mart when the mini-mart clerk starting yelling at him. While leaving, Fontes saw a "young

2

Caucasian kid" (later identified as the CW) standing on the sidewalk. The CW looked at Fontes and his friend, and Fontes and the CW made eye contact with each other.

According to defense counsel, Fontes did not rob the CW but left the scene. Later that day, Fontes happened to get on the same bus that the CW was riding. Fontes was arrested when the police boarded the bus and apprehended him. Defense counsel stated that none of the items taken from the CW were in Fontes's possession. Defense counsel further noted that the CW described the two males who robbed the CW, the first of whom was described as having a crew cut and could not have been Fontes who had long hair.[3] Defense counsel then stated that the CW described the second male as being huskier than Fontes and that the CW did not mention the second male as having any facial hair, whereas Fontes had a "bushy goatee." Defense counsel argued that the CW was mistaken in identifying Fontes as one of the robbers and only recognized Fontes from seeing Fontes at the mini mart minutes before the CW was robbed.

C.

At trial, the prosecution offered the testimony of the mini-mart clerk and the CW. The mini-mart clerk identified Fontes as the person who came into the mini mart shortly after 2:00 a.m. The clerk saw Fontes put a package of beef jerky into his jacket and attempt to leave without paying. The clerk confronted Fontes who denied taking the beef jerky and left the store. The clerk opened the mini-mart door and told Fontes that if he did not return the beef jerky she would call the police. Fontes eventually returned the beef jerky. The clerk saw Fontes and his companion leaving the mini-mart parking lot headed in the direction of a "white, fair" male with short hair.

The CW testified that as he approached the mini mart, he noticed Fontes and another male leaving the mini mart and

---

[3] Defense counsel also recited the CW's description of the first male's height and weight in support of counsel's assertion that this male could not have been Fontes.

heard the store clerk yell that she saw them take something and to give it back or she would call the police. To avoid the commotion, the CW walked away. Fontes and the other male followed the CW. According to the CW, Fontes stepped in front of the CW and demanded money. Fontes grabbed the CW's arm and threatened to "put [the CW] to sleep" if he tried to escape. Fontes and his companion took a bag the CW was carrying and other belongings. The CW testified that he got a good look at Fontes's face under the street lamps before Fontes and the other male forced him to a darker area.

After the robbery, the CW ran back to the mini mart and asked the clerk to call the police. When the police arrived, the CW gave the police a description of the two robbers. The CW acknowledged at trial that his description of the robber he later identified as Fontes did not indicate that the robber had facial hair. Later that day, the CW saw Fontes as they both boarded the same bus. The CW testified that he recognized Fontes's beard, hair, eyes, and nose. While on the bus, Fontes kept looking back at the CW. The CW borrowed a cell phone and called the police.

D.

Fontes testified in his own defense at trial. Fontes stated that he and his friend went to the mini mart. According to Fontes, the clerk at the mini mart was giving him "attitude" so he pretended as if he was going to steal a bag of beef jerky and was asked to leave. As Fontes and his friend left the mini mart, they walked passed the CW. The CW kept looking at them even after they crossed the street. Fontes denied robbing the CW. Fontes said that he was shocked when the police stopped the bus and the CW pointed Fontes out to the officers. Fontes stated that he sported a goatee on the day in question.

II.

A defendant who raises a claim of ineffective assistance of counsel bears the burden of demonstrating that counsel's performance was not objectively reasonable, in that it was not within the range of competence demanded of attorneys in

4

criminal cases. <u>Briones v. State</u>, 74 Haw. 442, 462, 848 P.2d 966, 976 (1993). The defendant must show: (1) "specific errors or omissions of defense counsel reflecting counsel's lack of skill, judgment or diligence" and (2) "that these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." <u>State v. Antone</u>, 62 Haw. 346, 348-49, 615 P.2d 101, 104 (1980). "General claims of ineffectiveness are insufficient and every action or omission is not subject to inquiry." <u>Briones</u>, 74 Haw. at 462, 848 P.2d at 976. In addition, "[s]pecific actions or omissions alleged to be error but which had an obvious tactical basis for *benefitting* the defendant's case will not be subject to further scrutiny." <u>Id.</u> at 462-63, 848 P.2d at 976 (emphasis in original).

## A.

As noted, Fontes's theory of the case was mistaken identity. In closing argument, trial defense counsel stated:

> When a crime has been committed, the first thing you want to do is try to figure out who did it. And the reason for that is you want closure. Once we have closure, we can move on.

> Now, ladies and gentlemen, that's what happened in this case. [The CW] was robbed that night or that morning. . . . And picture him now waiting for the bus, okay, nine, ten o'clock at night, still pretty much that same day still under the stress of what had just happened that morning. So picture him at the bus stop when he sees a familiar face. He sees the face of Jonathan Fontes. And, ladies and gentlemen, that's the trigger. That's what triggered his memory right there. He recognized [Fontes's] face because he saw [Fontes]. He saw [Fontes] minutes before or moments before - I'm sorry - a few minutes before he was robbed.

> . . . .

> Now, how does - then how does [the CW] make this leap from recognizing someone's face to then fingering him as a person that robbed him? Well, think about it. In this case, it's pretty easy. [The CW] can already associate Jonathan Fontes with something that went wrong, something bad that happened because he -- when he realizes who [Fontes] is, he can remember that, eh, these were the guys that were going to steal the beef jerky, and he has this image in his mind of these two guys coming out of the store and the clerk saying she's going to call the police. . . . So he can associate [Fontes's] face with something bad, and that's how then he can go back and try to make [Fontes's] face fit as the person that robbed him.

Trial defense counsel's strategy was to argue that the CW misidentified Fontes as one of the males who robbed him because the CW associated Fontes with criminal activity, namely, the attempt to shoplift beef jerky from the mini mart, which occurred in close proximity to the robbery. Evidence of the shoplifting incident was integral to the mistaken-identify defense. Such evidence was necessary to explain how the CW recognized Fontes's face, why the CW would have associated Fontes with criminal activity, and how the CW could have mistakenly identified Fontes as one of the robbers.

We conclude that the actions of trial defense counsel in eliciting and failing to object to evidence of the shoplifting incident "had an obvious tactical basis for *benefitting* the defendant's case" because such evidence supported Fontes's mistaken-identity defense. See Briones, 74 Haw. at 462-63, 848 P.2d at 976. Fontes has not shown that trial defense counsel's strategy was objectively unreasonable under the circumstances of this case.

B.

Furthermore, contrary to Fontes's claim, we conclude that evidence of the shoplifting incident was relevant and admissible to prove identity, pursuant to Hawaii Rules of Evidence (HRE) Rule 404(b) (Supp. 2010). Evidence that Fontes was identified by the mini-mart clerk as having been involved in a shoplifting incident in the same area and shortly before the CW was robbed was relevant to placing Fontes at the scene of the robbery. In addition, the CW testified that he saw the mini-mart clerk yelling at two males, one of whom the CW identified as Fontes, and that these same two males later robbed him. The mini-mart clerk's identification of Fontes as the person involved in the shoplifting incident therefore served to corroborate the CW's identification of Fontes as one of the robbers. Accordingly, evidence of the shoplifting incident was admissible under HRE Rule 404(b) to prove identity.

The Circuit Court gave a limiting instruction to the jury that they could consider evidence that Fontes "may have committed other crimes, wrongs, or acts . . . only on the issue of Defendant's motive, intent, *identity*, or state of mind[.]" (Emphasis added.)  We conclude that trial defense counsel did not render ineffective assistance by failing to object to evidence of the shoplifting incident that was relevant and admissible under HRE Rule 404(b).  In addition, the admissibility of the shoplifting evidence reinforces our view that trial defense counsel's strategy of incorporating the shoplifting evidence into Fontes's defense was not unreasonable.

C.

We reject Fontes's claim that his trial counsel was ineffective for failing to object to testimony regarding the robbery on the ground that the testimony was cumulative.  Because Fontes's defense at trial was mistaken identity, he had no compelling reason to contest evidence regarding the details of the robbery.  Fontes did not deny that the CW had been robbed; Fontes only denied that he had been one of the robbers.  In any event, the CW was the only witness to testify regarding the robbery.  Fontes does not provide any convincing argument that the CW's testimony regarding the robbery was cumulative or that an objection on that ground would properly have been sustained.

III.

We affirm the September 16, 2008, Judgment of the Circuit Court.

DATED:  Honolulu, Hawai'i, February 28, 2011.

On the briefs:

Clayton K. Kimoto
for Defendant-Appellant

James M. Anderson
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*
Chief Judge

Associate Judge

Associate Judge

7